IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHN DOE,

      Plaintiff,

v.     No. 1:23-cv-1052-SMD-SCY

QUESTA INDEPENDENT SCHOOL
DISTRICT, LORI PASSINO, JOHN
ROE 1, and JOHN ROE 2,

      Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART DEFENDANTS' JOINT MOTION FOR JUDGMENT ON THE PLEADINGS

According to Plaintiff John Doe's Complaint for Violation of Civil Rights, Negligence, and Other Tortious Conduct, Defendant Lori Passino, an adult cheerleading coach and teacher employed by the Questa Independent School District, groomed and sexually abused Doe, then a minor, during his senior year of high school. Doe's allegations ordinarily would suffice to state federal civil rights claims if brought within the applicable three-year statute of limitations. Here, however, Doe waited 25 years to bring suit, and Defendants move for judgment on the pleadings on the basis that the claims are time-barred.

Doe contends that as a male victim of sexual abuse by an adult female, he believed that he was complicit in the sexual activity, and therefore neither recognized Passino's conduct as abusive nor realized that he was injured as a result. Thus, he argues, his claims under 42 U.S.C. § 1983 either did not accrue until recently or the statute of limitations should be tolled. For the reasons outlined in this opinion, the Court finds that Doe fails to plausibly allege facts sufficient to delay the accrual of his federal claims or toll the statute of limitations. Consequently, the Court finds that

Doe's federal claims are time-barred. The Court dismisses without prejudice the federal claims with leave to amend and denies without prejudice the motion to dismiss the state law claims. Should Doe opt not to amend his Complaint, the Court will remand the state law claims.

## RELEVANT BACKGROUND

I.  Factual Background

During the 1997–1998 school year, John Doe was a minor[1] and a senior student athlete at Questa Junior/Senior High School, a public school within the Questa Independent School District ("QIS") in Taos County, New Mexico. *See* Doc. 1-2 ¶¶ 2, 39, 48. Doe was a member of the QIS-sponsored high school football and basketball teams. *Id.* ¶ 22.

Lori Passino worked for QIS as a teacher and cheerleading coach during the same school year. *See id.* ¶¶ 3, 18. As part of her duties, Passino attended and chaperoned high school athletic events and games. *See id.* ¶¶ 18, 23. Passino and the cheerleading squad traveled with the high school athletic teams, often via QIS-sponsored buses, to activities. *See id.* ¶ 25.

According to the Complaint, Passino began to groom Doe in the fall of 1997 by flirting with him and giving him unusual attention on bus rides to QIS-sponsored athletic events. *See id.* ¶ 29. Passino's conduct was "open and notorious and [was] or should have been observed by" the other QIS directors and/or coaches, including Defendants John Roe 1 and John Roe 2, who were on the bus. *See id.* ¶¶ 4, 30. On one QIS-sponsored bus ride in 1997, Passino's conduct became physical. *Id.* ¶¶ 31, 35, 38. Following that event, Passino began to sexually abuse Doe, both on school grounds and in her vehicle when she drove him home. *See id.* ¶¶ 39–41, 43.

During this same period, Passino was married to one of Doe's athletic coaches, and Doe often interacted with Passino's husband. *See id.* ¶ 55. Doe "did not seek out or initiate" this contact

---

[1] Doe was born in 1980. *See* Doc. 1-2 ¶ 21. For purposes of this opinion, the Court presumes that Doe turned 18 after he graduated from high school.

with Passino, and he "was ashamed, embarrassed[,] and guilt-ridden as a result of the abuse . . . ." *Id.* ¶¶ 36, 42, 56. Doe asserts that he did not recognize Passino's conduct as abuse, he "did not recognize he suffered any injury from the sexual activity[,]" and he "is only now beginning to discover[] that the sexual activity . . . was abusive and that it resulted in lasting psychological injuries . . . ." *See id.* ¶¶ 57–58.

II.  Procedural Background.

On June 27, 2023, Doe filed his Complaint in state court. *See id.* at 1. In Count I, he brings a claim under 42 U.S.C. § 1983 against Passino for violation of his due process rights by depriving him of his right to bodily integrity; in Count II, he brings the same claim against the Roe Defendants; in Count III, he brings a claim under § 1983 against QIS for failing to adequately screen, train, supervise, or take action against Passino; and in Count IV, he brings a claim under the New Mexico Tort Claims Act ("NMTCA"), N.M. Stat. Ann. § 41-4-6, against QIS, Roe 1, and Roe 2 for failing to adequately operate or maintain the school. *See* Doc. 1-2 ¶¶ 60–107.[2] Defendants timely removed the lawsuit under the Court's federal question jurisdiction on November 24, 2023, and filed answers on December 29, 2023. *See* Docs. 1 at 1–2; 5–6.

United States District Judge James Browning entered an order on January 27, 2025, allowing John Doe to proceed under a pseudonym.[3] Doc. 21. On April 11, 2025, Defendants moved for judgment on the pleadings. Doc. 33. Discovery in this matter has been stayed pending resolution of Defendants' motion. *See* Doc. 34.

---

[2] Doe brought a state tort claim against Passino for sexual abuse and battery, *see id.* ¶¶ 108–113, but the Court dismissed Count V on the basis that the NMTCA immunized Passino, a public employee, from civil liability for the tort. *See* Doc. 44.

[3] Pursuant to the Court's orders, *see* Docs. 21 at 3; 25, Doe filed a sealed annotated complaint, *see* Doc. 30. The Court cites the original complaint in this opinion.

**LEGAL STANDARDS**

I.      Motion for Judgment on the Pleadings Standard.

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." *Mata v. Anderson*, 760 F. Supp. 2d 1068, 1082 (D.N.M. 2009) (quoting Fed. R. Civ. P. 12(c)). "A judgment on the pleadings should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Id.* (quotation marks, brackets, and citation omitted). The Court evaluates a Rule 12(c) motion using the same standard that governs a Rule 12(b)(6) motion. *See id.* at 1083 (citation omitted); *see also Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012). As such, the Court accepts the Complaint's well-pled factual allegations as true and views them in a light most favorable to Doe, drawing all inferences in his favor. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

II.      Judicial Notice.

"When a party presents matters outside of the pleadings for consideration, as a general rule 'the court must either exclude the material or treat the motion as one for summary judgment.'" *Lee v. Univ. of N.M.*, 449 F. Supp. 3d 1071, 1105 (D.N.M. 2020) (quoting *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017)). Of the "three limited exceptions to this general principle[,]" *see id.* (citations omitted), only one is relevant here: "matters of which a court may take judicial notice." *Id.* (quoting *Tellabs, Inc.*, 551 U.S. at 322) (subsequent citation omitted). "[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." *Id.* (quoting *Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th

Cir. 2001)).

In his response brief, Doe references several scholarly research articles. *See, e.g.*, Doc. 38 at 2, 9–10, 13 (citing David Lisak, *The Psychological Impact of Sexual Abuse: Content Analysis of Interviews with Male Survivors*, J. of Traumatic Stress (Oct. 1994); Guy R. Holmes, Liz Offen & Glenn Waller, *See No Evil, Hear No Evil, Speak No Evil: Why Do Relatively Few Male Victims of Childhood Sexual Abuse Receive Help for Abuse-Related Issues in Adulthood?*, Clinical Psych. Rev. (1997); Gurmeet K. Dhaliwal et al., *Adult Male Survivors of Childhood Sexual Abuse: Prevalence, Sexual Abuse Characteristics, & Long-Term Effects*, Clinical Psych. Rev. (1996); Michael F. Myers, M.D., *Men Sexually Assaulted as Adults & Sexually Abused as Boys*, Archives of Sexual Behavior (June 1989)). Doe offers the articles to argue that male victims of "childhood sexual abuse often struggle to acknowledge the abuse was abuse." *Id.* at 9. Doe offers no authority to show that the information within the articles constitutes facts that are a matter of public record, nor does he attempt to explain why judicial notice would be appropriate. *See generally* Doc. 38. Under these circumstances, the Court will not take judicial notice of the articles in deciding the motion.

## DISCUSSION

Defendants move to dismiss Doe's federal claims as time-barred under the statute of limitations. *See* Doc. 33 at 7–9. Doe argues that his claims did not accrue until recently when he realized that Passino's wrongful conduct caused him harm. *See* Doc. 38 at 4, 8–13. As explained herein, even accepting as true Doe's allegations concerning his subjective knowledge, examining the issue of accrual under an objective standard, as it must, the Court finds Doe's claims accrued in 1998. Moreover, because the statute of limitations on his § 1983 claims ran in 2001 and Doe fails to plausibly allege that he is entitled to equitable or statutory tolling, the Court finds his federal

claims are time-barred and must be dismissed.

    I.        Accrual, the Statute of Limitations, and Tolling in § 1983 Actions.

Tenth Circuit authority dictates "that for § 1983 claims arising in New Mexico[, the statute of] limitations period is three years, as provided in New Mexico's statute of limitations for personal-injury claims." *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1212 (10th Cir. 2014) (citing N.M. Stat. Ann. § 37-1-8) (additional citation omitted); *see also Herrera v. City of Espanola*, 32 F.4th 980, 989 (10th Cir. 2022). The clock starts ticking on the limitations period when the claims accrue. *See Robert L. Kroenlein Tr. ex rel. Alden v. Kirchhefer*, 764 F.3d 1268, 1275 (10th Cir. 2014) (citations omitted). While state law dictates the length of the statute of limitations for § 1983 claims, "federal law governs the question of accrual . . . ." *See Smith v. City of Enid by & through Enid City Comm'n*, 149 F.3d 1151, 1154 (10th Cir. 1998) (citing *Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995); *Baker v. Bd. of Regents*, 991 F.2d 628, 632 (10th Cir. 1993)). Generally, under the federal discovery rule, "accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Herrera*, 32 F.4th at 990 (quoting *Wallace v. Kato*, 549 U.S. 383, 388 (2007)) (quotation marks omitted); *see also Varnell*, 756 F.3d at 1215; *Smith*, 149 F.3d at 1154. "Put another way, '[a] civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action,'" *Herrera*, 32 F.4th at 990 (quoting *Smith*, 149 F.3d at 1154), "or 'when the plaintiff's right to resort to federal court was perfected.'" *Id.* (quoting *Bergman v. United States*, 751 F.2d 314, 316 (10th Cir. 1984)) (quotation marks omitted); *see also Williams v. N.M. State Univ.*, No. 2:23-cv-1059 GBW/KRS, 2025 WL 2172001, at *5 (D.N.M. July 31, 2025). "[T]he standard for determining whether a federal claim has accrued is objective." *Alexander v. Oklahoma*, 382 F.3d 1206, 1219 n.6 (10th Cir. 2004) (citation omitted).

"The statute of limitations is an affirmative defense that must be raised by the defendant." *Herrera*, 32 F.4th at 991 (citation omitted). "Typically, facts must be developed to support dismissing a case based on the statute of limitations." *Id.* (citation omitted). "But '[a] statute of limitations defense may be appropriately resolved on [a motion for judgment on the pleadings] when the dates given in the complaint make clear that the right sued upon has been extinguished.'" *Id.* (quoting *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016)). If there is no dispute about the dates on which relevant acts occurred from the face of the complaint, then the Court may decide as a matter of law when the claims accrued and the statute of limitations began to run. *See id.* (citations omitted).

State law also determines the question of tolling. *See Varnell*, 756 F.3d at 1212 (citation omitted). "Only generally applicable tolling provisions—such as those based on minority, incapacity, and equitable grounds—should be incorporated for use under § 1983." *Id.* (citation omitted). "Under New Mexico law, 'exceptions to statutes of limitation must be construed strictly,'" *Varnell*, 756 F.3d at 1214 (quoting *Slade v. Slade*, 468 P.2d 627, 628 (N.M. 1970)), "and the plaintiff invoking a tolling provision bears the burden of persuasion," *id.* (citing *Stringer v. Dudoich*, 583 P.2d 462, 463 (N.M. 1978)).

II.     Doe's Claims Accrued in 1998.

Passino's alleged abuse ended in 1998, the same year Doe turned 18 years old and graduated high school. *See* Doc. 1-2 ¶¶ 21, 48. The Complaint makes clear that Doe's claims accrued—and the statute of limitations began to run—in 1998, on the date of the last act of abuse. *See, e.g.*, *Varnell*, 756 F.3d at 1216 (noting that, just as "'a battery is complete upon physical contact, even though there is no observable damage at the point of contact[,]'" a minor plaintiff's "claim accrued no later than the last sexual abuse") (brackets and quotation omitted). Accordingly,

7

from the face of the Complaint, the statute of limitations ran three years later in 2001, and Doe's claims—filed decades later—are untimely. It is Doe's burden to establish that his claims are timely. *See Herrera*, 32 F.4th at 992 (citations omitted).

III.     Doe Offers No Viable Basis for Tolling.

Doe offers three bases for tolling: the federal discovery rule, the state discovery rule, and the state incapacity statute. *See* Doc. 38. First, Doe maintains that, under the federal discovery rule, his claims did not accrue until sometime after 2001 because he did not understand Passino's conduct was abusive, nor did he realize that the abuse caused him lasting psychological injury. *See* Docs. 1-2 ¶¶ 57–58; 38 at 4–5, 9–12. He contends that to find the accrual date, the Court must examine his "unique circumstances"—i.e., that he was the male teenage victim of "sexual abuse perpetrated by an older female authority figure"—"to determine when a reasonable person in [his] shoes would have become sufficiently aware [of the injury and its cause] to discover their claim." Doc. 38 at 4–5 (citations omitted).

To begin, the Court notes that "the discovery rule's standard is an objective one; it is based on the knowledge of a 'reasonable person' in the plaintiff's situation." *Williams*, 2025 WL 2172001, at *5 (citing *Alexander*, 382 F.3d at, 1216; *Arvayo v. United States*, 766 F.2d 1416, 1422 (10th Cir. 1985)); *see also* Doc. 46 at 5 (discussing *Varnell v. Dora Consol. Sch. Dist.*, No. 2:12-cv-0905 JCH/GBW, 2013 WL 12146483, at *6 (D.N.M. May 13, 2013)). Doe posits that because of cultural norms, he did not understand Passino's conduct was abusive, nor did he realize that the abuse caused him lasting psychological injury. *See* Docs. 1-2 ¶¶ 57–58; 38 at 4–5, 9–12. Even taking these allegations as true, the Court finds they do not provide a basis to delay accrual of the claims.

Doe argues first that because he did not recognize Passino's conduct was wrong, his claims

8

did not immediately accrue. *See* Doc. 38 at 9–10. Yet, "a plaintiff need not understand the legal basis of his claim before the statute of limitations will begin to run." *See Coleman v. Morall*, 64 F. App'x 116, 119 (10th Cir. 2003) (examining *United States v. Kubrick*, 444 U.S. 111, 121–22 (1979) (holding that a claim accrued on the date the plaintiff "learned that he was injured, even if he did not know that the alleged tortfeasor was negligent, because, as a plaintiff 'armed with the facts about the harm done to him, [he] can protect himself by seeking advice in the medical and legal community'")); *accord Smith v. TFI Fam. Servs., Inc.*, No. 17-2235-JWB, 2019 WL 6037380, at *5 (D. Kan. Nov. 14, 2019) (noting that "the discovery rule has not been construed to mean that a plaintiff must understand that her legal rights have been violated before a claim accrues[;]" accrual is triggered by "knowledge or notice of facts underlying the injury and causation"). Indeed, "courts should not postpone accrual of the cause of action until the plaintiff has realized the legal basis of his claim." *Coleman*, 64 F. App'x at 119 (citing *Kubrick*, 444 U.S. at 122–23). Rather, "a plaintiff must use reasonable diligence in seeking to discover facts giving rise to a claim for relief." *Alexander*, 382 F.3d at 1216 (citation omitted); *see also Arvayo*, 766 F.2d at 1422 ("the question whether [a plaintiff has been] 'reasonably diligent' is of course an objective one"). Here, the Complaint makes clear that Doe knew of facts giving rise to a claim for relief—that Passino engaged in sexual contact with him—and there is no allegation that he repressed the memories or otherwise did not recognize that the contact was sexual.

Doe next contends that he did not realize that he was injured by the illicit contact, and thus he did not discover his claims. *See* Doc. 38 at 10–13. However, "[t]he injury which is the 'basis of the action' in such a case is the violation of some constitutional right, not the physical, mental, or other harm that may have been occasioned by it." *Coleman*, 64 F. App'x at 118 (quoting *Smith*, 149 F.3d at 1154). So while Doe emphasizes his later-discovered psychological injuries caused by

the abuse, *see, e.g.*, Docs. 1-2 ¶¶ 58–59; 38, they are not central to this analysis. Instead, the harm that forms the basis of Doe's claims is the violation of his constitutional rights—specifically, the violation of his bodily integrity.[4] *See* Doc. 1-2 ¶¶ 61–63, 73, 87, 90–91; *see also Abeyta By & through Martinez v. Chama Valley Indep. Sch. Dist., No. 19*, 77 F.3d 1253, 1255 (10th Cir. 1996) (holding that "[a] teacher's sexual molestation of a student is an intrusion of the student's bodily integrity" and "violates [the] student's substantive due process rights") (citations omitted); *cf. Coleman*, 64 F. App'x at 118–19 (finding that the injury relevant to determining accrual was the forced administration of medication, not the later-diagnosed condition that was a side effect of the medication); *Smith*, 149 F.3d at 1154 (finding that "the constitutional injury[ that] triggers the statute of limitations for purposes of § 1983[] occurred when" a state law took effect and altered the plaintiff's employment contract, "not when the consequence of that constitutional injury . . . manifested itself" upon his later termination); *Shovah v. Mercure*, 44 F. Supp. 3d 504, 507, 510 (D. Ver. 2014) (finding that, for purposes of 18 U.S.C. § 2255, claim accrued under the discovery rule at the time of the alleged abuse, not when plaintiff later discovered the resulting psychological harm). Doe fails to plausibly allege that he was unaware of the violation of his bodily integrity in 1998.

The decisions in *Varnell* and *Williams* are instructive. First, in *Varnell*, the Tenth Circuit found that "the common-law tort most analogous to" a plaintiff's § 1983 claim for sexual abuse perpetrated on a child by a teacher was the tort of "battery, which occurs when an individual acts intending to cause a harmful or offensive contact with the person of the other or a third person, or

---

[4] Doe cites two cases discussing when sexual abuse victims discovered their injuries, including venereal disease, pregnancy, and depression. *See* Doc. 38 at 11 (citing *Martinez-Sandoval v. Kirsch*, 884 P.2d 507, 512–14) (N.M. Ct. App. 1994); *Yruegas v. Vestal*, 356 F. Supp. 2d 1238, 1239–40 (D.N.M. 2004)). As discussed herein, the relevant inquiry for purposes of determining accrual is the violation of his bodily integrity, which occurred at the time of the abuse.

an imminent apprehension of such a contact, and an offensive contact with the person of the other directly or indirectly results." *Varnell*, 756 F.3d at 1215–16 (quotation marks and citations omitted). Just as a battery claim is complete and accrues "upon physical contact, even though there is no observable damage at the point of contact[,]" the *Varnell* court held that the plaintiff's § 1983 "claim accrued no later than the last sexual abuse by" the teacher. *Id.* at 1216. And although the plaintiff in that case "argue[d] that her claims accrued much later because she did not realize the extent of her psychological injury until shortly before filing suit[,]" the Tenth Circuit disagreed and found that she "knew long before she filed suit all the facts necessary to sue and recover damages." *Id.* The facts included, for example, allegations that the plaintiff feigned sickness to get out of sexual contact with the defendant, the defendant told the plaintiff "not to tell anyone so she would not get in trouble[,]" the plaintiff was afraid to disclose the abuse, and the plaintiff hated the sexual contact. *See id.* at 1216–17.

Here, the allegations make plain that Doe knew facts relevant to his constitutional injury—the violation of his bodily integrity via unwanted sexual contact—at the time of the abuse. Specifically, the Complaint describes specific sexual contact and notes that Doe was "caught off-guard," as he neither sought the attention nor initiated the sexual activity. *See* Doc. 1-2 ¶¶ 35–37, 42. The Complaint details the type of sexual contact that "Passino coerced and manipulated [Doe] to engage in . . . ." *Id.* ¶¶ 44–47. And the Complaint explains that Doe "was ashamed, embarrassed and guilt-ridden" both "as a result of the abuse" and because he had a relationship with Passino's husband, a QIS athletic coach. *Id.* ¶¶ 55–56. The Court finds that this unwanted sexual contact constitutes the violation of Doe's bodily integrity and the constitutional injury that triggers accrual of his § 1983 claims. Doe cites no authority to support a finding that his claims did not accrue until he understood the "full extent of his [psychological] injuries . . . ." *See Coleman*, 64 F. App'x at

11

119 (quoting *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994)). Further, even without the fact of this known constitutional injury, the Court agrees with Defendants that "it is implausible to suggest that [Doe] did not know or should not have known that his emotional distress"—a psychological injury he experienced at the time of the abuse—"was caused by the sexual activity." *See* Doc. 46 at 4.

The Court's finding is bolstered by the decision in *Williams*. There, the plaintiffs argued they were "psychologically unable to recognize their injuries" due to the effects of the abuse, their own "feelings of self-blame and denial, and their particular vulnerabilities[,]" such as a "prior history of sexual violence that made" one plaintiff "uniquely susceptible." 2025 WL 2172001, at *5 (citation omitted). The *Williams* court found, though, that the plaintiffs knew or had reason to know of the simple "facts necessary to support a § 1983 action": (1) they experienced the abuse; and (2) they knew their abuser was employed by the university. *See id.* (citing *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006)) ("holding the date of accrual is 'when facts that would support a cause of action are or should be apparent'"). Those facts were all that was necessary to find the date of accrual considering the discovery rule. *See id.* Here, again, the Complaint makes clear that as early as 1998, Doe knew or should have known that Passino, an adult QIS employee, coerced him into unwanted sexual contact at school-sponsored events or on school property while he was a minor. These facts are sufficient to support his claims under the objective discovery rule, even considering the "unique circumstances" Doe outlines in his response brief.

The Court is sympathetic to Doe's position and recognizes that a young adult may not have stopped to consider the legal ramifications of Passino's alleged misconduct.[5] The allegations in his

---

[5] The Court pauses to note that its decision today only disposes of Doe's federal claims based on the facts as they are currently alleged. Moreover, the statute of limitations for Doe's state law claims is much more generous, allowing "an action for damages based on personal injury caused by childhood sexual abuse" no later his 24th birthday **or** "three

Complaint, however, make clear that he knew or had reason to know "all the *facts* necessary to sue and recover damages" in 1998. *See Williams*, 2025 WL 2172001, at *6 (quoting *Varnell*, 756 F.3d at 1216) (subsequent citations omitted). As the Complaint currently stands, Doe fails to plausibly allege facts to support a finding that he neither knew nor had reason to know of the constitutional injury that forms the basis of his claims. *See Herrera*, 32 F.4th at 990 (quotation omitted); *see also Coleman*, 64 F. App'x at 118 (quotation omitted). Thus, the federal discovery rule does not operate to toll the statute of limitations here.

Doe offers similar reasoning to argue that New Mexico's discovery rule tolls the statute of limitations. *See* Doc. 38 at 9–11. He asserts that under the state discovery rule, New Mexico courts consider "the full circumstances of the Plaintiff, including the experience/tort itself, and when the injury and its cause would reasonably develop . . . ." *Id.* at 5 (citing *Martinez-Sandoval v. Kirsch*, 884 P.2d 507, 512 (N.M. 1994)).

Doe relies on *Kevin J. v. Sager*, 999 P.2d 1026, 1026 (N.M. Ct. App. 2000), to support his argument that New Mexico courts "recognize that a reasonable person in [his] position would be unlikely to" recognize that Doe did not understand Passino's conduct was wrongful or that he was injured. *See* Doc. 38 at 9. The holding in *Kevin J.* does not support Doe's position. To begin, the issue in that case was "the extent of knowledge required to start the statute of limitations running under [N.M. Stat. Ann. §] 37-1-30(A)(2)[,]" which is "the statute of limitations for claims arising from child sexual abuse" and inapplicable for purposes of Doe's federal claims. *See Kevin J.*, 999 P.2d at 1026. Regardless, the *Kevin J.* court provided a helpful discussion of *Martinez-Sandoval*, another case Doe cites favorably and one "that did not involve the special statute of limitations for childhood sexual abuse." *See id.* at 1029 (citing *Martinez-Sandoval*, 884 P.2d 507). There, the New

---

years from the date that [he] first disclosed the . . . childhood sexual abuse to a licensed medical or mental health care provider in the context of receiving health care from the provider." N.M. Stat. Ann. § 37-1-30(A).

13

Mexico Court of Appeals "held that, in the case of a plaintiff who suffered alleged damages from venereal disease and pregnancy caused by the defendant, the statute of limitations began to run at the time the plaintiff realized that these substantial injuries were caused by that defendant's alleged misconduct." *Id.* (citing *Martinez-Sandoval*, 884 P.2d at 513). The court was careful to distinguish *Martinez-Sandoval*, which "addresse[d] the general statute of limitations for torts resulting in physical injuries[,]" from the claim at issue in *Kevin J.*, which dealt "with a specialized statute that is particularly applicable to psychological injuries." *See id.* The *Martinez-Sandoval* court "specifically noted that the plaintiff's cause of action was premised upon damages" due to the plaintiff's pregnancy and sexually transmitted disease from the defendant. *See id.* (citing 884 P.2d at 514). In *Kevin J.*, on the other hand, the plaintiff alleged only psychological injuries, and the court was faced with the question of "when [the p]laintiff knew or should have known of the alleged psychological injury that [was] the basis for his claim . . . ." *See id.* On that basis, the *Kevin J.* court found that "[t]he holding of *Martinez-Sandoval* . . . [did] not apply to [its] analysis." *See id.*

Here, Doe's § 1983 claims are premised on his *constitutional* injury—the violation of his bodily integrity. Under *Martinez-Sandoval*, the relevant inquiry is when a reasonable person in Doe's position knew or should have known of the injury caused by the alleged misconduct. *See Martinez-Sandoval*, 884 P.2d at 513. As explained above, Doe fails to plausibly allege that he was unaware of facts related to the constitutional injury or the alleged misconduct in 1998. Consequently, the state discovery rule does not toll the statute of limitations.

Finally, Doe urges the Court to apply N.M. Stat. Ann. § 37-1-10,[6] which tolls the statute of limitations for minors and incapacitated individuals for one year after the termination of the

---

[6] Doe offers other arguments to support tolling, but only in reference to his state claims. *See* Doc. 38 at 14–19.

incapacity. *See* Doc. 38 at 6. Doe fails to plausibly allege that he was incapacitated.

Section 37-1-10 does not define "incapacitated person," and courts in this district have relied on the definition from the New Mexico Probate Code to interpret the phrase. *See Williams*, 2025 WL 2172001, at *7–8; *R.P. v. Santa Fe Pub. Schs.*, No. 1:18-cv-01051 KWR/KK, 2020 WL 435368, at *3 (D.N.M. Jan. 28, 2020); *Doe 1 v. Espanola Pub. Schs.*, No. 1:17-cv-0917 KK/LF, 2019 WL 586661, at *7–8 (D.N.M. Feb. 12, 2019); *JM through Foley v. N.M. Dep't of Health*, No. 2:07-cv-0604 RB/ACT, 2008 WL 11409153, at *4 (D.N.M. Dec. 31, 2008). Section 38-1-4 defines a person as "incapacitated" if s/he

> demonstrates over time either partial or complete functional impairment by reason of mental illness, mental deficiency, physical illness or disability, chronic use of drugs, chronic intoxication or other cause, except minority, to the extent that [s/]he is unable to manage his [or her] personal care or [s/]he is unable to manage his [or her] property and financial affairs.

N.M. Stat. Ann. § 38-1-4. New Mexico caselaw further explains that "[t]he test of mental capacity is whether a person is capable of understanding in a reasonable manner, the nature and effect of the act in which the person is engaged." *Williams*, 2025 WL 2172001, at *7 (quoting *Lent v. Emp't Sec. Comm'n of State of N.M.*, 658 P.2d 1134, 1137 (N.M. Ct. App. 1982)). With respect to asserting legal rights, New Mexico courts have noted that to be found incapacitated, the person must be "unable to manage [his] business affairs or estate, or to comprehend [his] legal rights or liabilities." *See Varnell*, 756 F.3d at 1214 (quoting *Lent*, 658 P.2d at 1137). The "test is 'similar to the test for determining a person's mental capacity to make a will' or 'to make a valid confession.'" *Williams*, 2025 WL 2172001, at *7 (quoting *Lent*, 658 P.2d at 1137).

Doe argues he was incapacitated because he "internalized any sense of wrongdoing and blamed himself for engaging in sexual activity with the spouse of one of his coaches." Doc. 38 at

15

13. Of the cases he cites in support of his position, only two merit a closer look.[7] In *R.P. v. Santa Fe Public Schools*, the plaintiffs, both in their twenties, alleged that their teacher sexually abused them while they were students in his fourth-grade class. 2020 WL 435368, at *1. The defendants moved to dismiss, and plaintiffs advocated for statutory tolling on the basis of incapacity. *See id.* at *1–2. The court found that plaintiffs had plausibly alleged facts to support tolling due to incapacity, because the complaint alleged that "since the abuse, [the plaintiffs had] suffered from severe drug addiction and ser[i]ous mental problems rendering them incapable of managing their affairs, with symptoms such as disassociation." *See id.* at 1, 3 (citations omitted). Here, on the other hand, the only facts Doe pleaded to demonstrate incapacity appear in paragraphs 56–59 of the Complaint, where he asserts that because of his feelings of personal responsibility and self-blame, he "did not recognize" Passino's conduct "as abuse or injurious until recently." *See* Doc. 1-2 ¶¶ 56–59. The Court finds these assertions do not plausibly allege that Doe was unable to comprehend his legal rights as is necessary to meet his burden to show he is entitled to tolling based on incapacity. *See Varnell*, 756 F.3d at 1214.

   The decision in *Doe 1 v. Espanola Public Schools* does nothing to shore up Doe's position. There, the plaintiffs (Jane Doe 2 and Jane Doe 4), alleged victims of the same fourth-grade teacher accused in the *R.P.* case, argued that they were entitled to statutory tolling based on incapacity. *See Doe 1*, 2019 WL 586661, at *1–2, 5–6. The court found Jane Doe 4 clearly presented evidence to demonstrate a genuine issue of fact as to whether she was incapacitated, given that she "cut herself, had suicidal thoughts, struggled to concentrate and to tolerate people touching her, dropped out of

---

[7] Doe cites three other cases that are easily distinguishable. *See* Doc. 38 at 14. In *Doe v. Roe*, 955 P.2d 951, 953–54 (Ariz. 1998), the court found that the plaintiff's claim did not accrue at the time of the abuse because she repressed memories of the abuse until she was an adult. The decision in *Ross v. Garabedian*, 742 N.E. 2d 1046, 1047, 1050 (Mass. 2001), is inapposite because the plaintiff did not bring federal claims, and the injury at issue was later-discovered psychological harm. Finally, in *Florez v. Sargeant*, 917 P.2d 250, 254–55 (Ariz. 1996), the court held that allegations of post-traumatic stress disorder were insufficient to toll the statute of limitations.

high school, was unable to hold a job, became addicted to drugs, was kicked out of her home, sexually trafficked, and physically abused, and lost custody of her child." *See id.* at *8. Jane Doe 2's evidence, on the other hand, presented a "close question" of whether she was entitled to statutory tolling due to incapacity. *Id.* at *9. Jane Doe 2 argued that she "put the abuse out of her mind and disclosed it to no one until approached about it, experienced feelings of responsibility and guilt for the abuse, and could not understand that she . . . had legal rights to exercise in this situation." *Id.* at *9. The court found that Jane Doe 2's evidence was sufficiently similar to a case in which a plaintiff alleged repressed memories and thus allowed Jane Doe 2's case to move forward. *See id.* (citing *Doe v. Roe*, 955 P.2d 951, 967 (Ariz. 1998)). Here, Doe makes no allegations that he repressed memories, put the abuse out of his mind, or could not understand he had legal rights. *See* Doc. 1-2.

Doe's arguments regarding statutory tolling—that he did not understand the alleged conduct was abusive or that he had been injured—echo those he made to advocate for delayed accrual and tolling and are similarly unpersuasive. At most, the allegations simply demonstrate that Doe did not *recognize* that Passino's conduct was actionable; they do not plausibly allege that he was *unable* to comprehend his legal rights. *See Varnell*, 756 F.3d at 1214. Consequently, the Court finds that Doe's allegations are insufficient to show he was incapacitated under § 37-1-10. The Court will grant the motion to dismiss but will allow Doe the opportunity to amend to plausibly allege tolling to the extent such allegations can be made in compliance with the dictates of Federal Rule of Civil Procedure 11.

IV.   The Court Denies Without Prejudice the Motion to Dismiss Doe's State Claims.

Having granted Defendants' motion to dismiss Doe's § 1983 claims, the Court will deny without prejudice the motion with respect to Doe's state claims. Should Doe decide *not* to move

to amend, the Court will decline to exercise supplemental jurisdiction over this matter and will remand the proceeding to state court for adjudication of Doe's state claims. *See Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.") (quoting *Smith*, 149 F.3d at 1156).

To be clear, the Court makes no findings regarding the date of accrual or the propriety of tolling with respect to Doe's state law claims.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Joint Motion for Judgment on the Pleadings is **GRANTED in part**. The Court **GRANTS** the motion with respect to Doe's federal claims and **DENIES without prejudice** the motion with respect to Doe's state claims.

**IT IS FURTHER ORDERED** that no later than **10 days** after entry of this Opinion, Doe may move to amend the complaint to plausibly allege tolling if such allegations can be made in compliance with the dictates of Federal Rule of Civil Procedure 11. If Doe fails to file such a motion, the Court will remand this matter to the Eighth Judicial District Court, Taos County, State of New Mexico.

_____
SARAH M. DAVENPORT
UNITED STATES DISTRICT JUDGE